RECEIVED
APR 12 2019
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

United States District Court

Ali Nadzhafaliyev
    Plaintiff

v.

Daniel Dyslin
Victoria Ingram
Richard Malis
Jeff Pharris
Daniel Hardy
James Dimas

Case No: 19cv2590
Judge Coleman
Mag. Judge Cox
PC 2

Judge:

## VERIFIED COMPLAINT

Now Comes Ali Nadzhafaliyev ("Plaintiff") and submits the instant Verified Complaint and in support states the following

### Jurisdiction and Venue

a) This Court's jurisdiction is invoked Pursuant to 42 U.S.C. 1983 insofar that Plaintiff's constitutional Rights were violated while Defendants were acting under color of state law.

b) The venue is appropriate insofar that all acts and ommissions occurred within the Northern District.

## Parties

c.) At all times Relevant hereto, Defendant Daniel Dyslin was acting under Color of state law as general counsel for the DHS and EMHC. Defendant Dyslin engaged in the complained of conduct

D) At all times relevant hereto, Defendant Victoria Ingram was acting under color of state law as Court liason for the EMHC. Defendant Ingram engaged in the complained of conduct

e) At all times Relevant hereto, Defendant Richard Malis was Acting under color of state law as acting Medical Director of the EMHC. Defendant directly supervised and engaged in the complained of conduct.

f) At all times Relevant hereto, Defendant Jeff Pharris was Acting under Color of state law as forensic Director of the EMHC. This Defendant is the chief Policy writer/enforcer at the EMHC and engaged in the complained of conduct

G.) At all times Relevant hereto, Defendant Daniel Hardy was acting under color of state law as Medical Director of the EMHC. Defendant Hardy engaged in the complained of misconduct.

h) At all times Relevant hereto, Defendant James Dimas was Acting under Color of state law as secretary of the DHS. This Defendant engaged in and enabled the complained of conduct.

## Prefacing Remarks

1. Plaintiff is a Refugee from the former USSR, speaks limited English and reads little English. On or about 12-21-04, Plaintiff was transferred from Cook County jail to the Elgin Mental Health Center ("EMHC"). For almost fifteen (15) years, plaintiff was held at the EMHC despite the fact Plaintiff did not exhibit any signs or symptoms of having a major mental illness without the aid of Psychotropic medication. In ~~the~~ Accordance with Supreme Court Rulings (Foucha V. Louisiana) Plaintiff was entitled to Release but the Above named Defendants engaged in a scheme or artifice to keep Plaintiff confined to a mental institution in violation of the law.

   The validity of Plaintiff's confinement was overturned in March of 2019 when Cook County Judge Hoffenburg accepted a Psychological evaluation from Cook County Court Services, rescinding their previous misdiagnosis of schizophrenia, and ordered Plaintiff's immediate Release. Plaintiff did not take Psychotropic Medication or receive "treatment" for a major mental illness that Requires hospitalization. Defendants, all of them, engaged in a scheme or artifice to keep Plaintiff warehoused while collecting federal funds for his stay. The instant complaint addresses the human warehousing and false imprisonment as well as the Unconstitutional Policies, Practices and Procedures EMHC maintained that enabled the wrongful conduct.

[scratched out text]

## Facts

2. Plaintiff was admitted to the EMHC on or about 12-21-04 after having been acquitted of Home invasion and Aggravated Battery.

3. Plaintiff asserts he was wrongfully diagnosed as a Paranoid schizophrenic and adjudicated Not Guilty By Reason of Insanity of that wrongful Diagnosis

4. Plaintiff wishes to include Cook County Psychological Services but is unsure of how to effectively achieve that without assistance of counsel or legal Resources.

5. At all times Relevant hereto, Plaintiff was denied the Right of Access to the Courts. EMHC is devoid of legal Resources or Persons adequately trained in the law. This Matter is Being dealt with in a different lawsuit but the facts are Relevant for the instant case

6. On the day of Plaintiff's arrest he was working at an assisted living Apartment Complex for senior citizens.

7. Plaintiff heard a female voice calling for help and Broke down the door of the Apartment he heard the voice come from. There was a male and female occupant in the apartment and the Male Resident attacked Plaintiff with a weapon. Plaintiff defended himself and the Male occupant sustained superficial injuries that Required stitches

8. Once Plaintiff was able to escape the residence he did so and resumed his work while maintaining awareness for cries of help. Plaintiff did not flee the area. ~~[redacted]~~ The Chicago Police immediately arrested Plaintiff on sight and did not attempt to investigate Plaintiff's good faith Motives

9. Plaintiff received ineffective assistance of counsel who did not contest or attack the charges based on their lack of merit. Instead defense counsel rushed to have Plaintiff Branded with a mental illness and thrown into an institution

10. After a significant amount of time passed with Plaintiff showing no signs of Psychosis or a serious mental illness, EMHC changed Plaintiff's Diagnosis to Drug induced in Psychosis in remission without Medication. After this, EMHC continued to hold Plaintiff as "Mentally ill and dangerous" for over a decade.

11. Over this period of time, Plaintiff attempted to acquire his Bachelor's degree in computer simulation through Devry University's online Program.

12. Over the years, EMHC staff contrived a multitude of excuses for keeping Plaintiff involuntarily committed. More often than not, the Reasons were based upon an unconstitutional disciplinary system that lacks written Rules or an opportunity to be heard. This unconstitutional Disciplinary system is currently being litigated in 17 CV 4469 NDIL

13. Of all the reasons used to maintain Plaintiff confined, none was worse than the Patently fraudulent declaration Plaintiff had been adjudicated to be deported on his Release which interfered with the Recommended discharge Plan for Plaintiff.

14. Consequently, once Plaintiff was finally adjudicated by a judge to be no longer in need of involuntary commitment and for ICE to be notified of his impending Release, ICE responded they did not wish to take custody of Plaintiff.

15. All named Defendants collectively kept Plaintiff in custody under the false pretense of being Mentally ill and dangerous as well as using the immigration status as an excuse to hold Plaintiff.

16. Plaintiff, for 15 years, objected to the Defendants holding him due to his immigration status. Plaintiff's treatment teams Repeatedly asserted to Plaintiff that his immigration status is Preventing his Progress towards Release. Defendants Malis, Zubik, Pharris, Hardy, and Dimas converted EMHC into a federal Detention facility for Plaintiff under the Approval of Dyslin

17. Defendants Zubik, Ingram, Malis, Pharris, Hardy and Dimas employed and enforced unconstitutional Practices, Policies and Procedures at the EMHC that are unconstitutional and led to Plaintiff being confined to a mental institution despite showing no signs or symptoms of a ~~mental~~ Mental illness. Defendant Dyslin directly Supervised and Ratified same

18. These unconstitutional Practices, Policies and Procedures allowed Plaintiff to Remain confined for Petty Rule Violations such as: keeping food in his room, exchanging movies, Arguing and other actions that are Acceptable in our Society. These actions are not signs of a mental illness that makes Plaintiff dangerous, but actually shows Plaintiff is Altruistic and caring. EMHC confines Plaintiff longer for sharing his Property while society glorifies those who share with People of lesser means.

19. Upon information and belief, EMHC receives federal funding for housing and "treating" Plaintiff which was a Motivating factor in keeping Plaintiff housed.

20. Over the fifteen years Plaintiff was warehoused, he was not treated for any mental illness, did not show any changes of Behavior yet was still Released.

21. Defendants essentially extracted "A Pound of Flesh" from Plaintiff.

22. of the trivial excuses to keep Plaintiff incarcerated, the most egregious is misconstruing Plaintiff's acts of self-defense as aggression

23. Plaintiff is housed on units with Psychotic Patients who are aggressive. On Multiple occasions, Plaintiff was Attacked and Plaintiff was compelled to Protect his Person. Plaintiff Never injured anyone, did not receive emergency medication, or have security called to intervene.

24. Defendants Ingram, Pharris and Hardy told Plaintiff's Treatment team to withdraw their Request for Plaintiff's Release.

25. Defendants Ingram, Pharris, Hardy, Malis, Dyslin and Dimas directed and or supervised the continued detention of Plaintiff Pursuant to Arbitrary and capricious Policies and Procedures.

26. All these named Defendants Acted in bad-faith, ill will and otherwise malicious motives in keeping Plaintiff incarcerated under the false Pretense of mental illness and Dangerous.

27. In March of 2019, Cook County Court Services who originally labled Plaintiff "Psychotic" and "Schizophrenic" Reversed themselves and acknowledged Plaintiff exhibits no signs or symptoms of a Mental illness that Requires Hospitalization and Recommended Plaintiff's Release.

## Count 1 False imprisonment
## All Defendants

28. Plaintiff incarporates by reference and sets forth verbatim Paragraphs 1-27

29. At all times relevant hereto Plaintiff enjoys the Right to liberty and due-process in the curtailment of that liberty and continued confinement

30. All the named Defendants had actual and constructive Notice and knowledge that Plaintiff did not meet the clinical criteria for confinement in a Mental institution but choose to actively engage in Plaintiff's unlawful continued confinement.

31. On information and belief, EMHC receives federal funding for providing "treatment" to Plaintiff and this was one of many factors that kept Plaintiff unlawfully incarcerated. EMHC did not provide any actual treatment because Plaintiff was not suffering from a mental illness

32. For fifteen years, Plaintiff was confined to a mental institution while showing no signs or symptoms of a mental illness without Psychotropic Medication.

33. Instead of doing the lawful action and advocate for Plaintiff's immediate Release, all named Defendants engaged in a scheme or artiface to maintain Plaintiff confined under false Pretense.

34. The day Cook County court services Reversed their own diagnosis that Plaintiff was schizophrenic, was the day when Plaintiff's commitment was declared invalid and affirmed by Judge Hoffenberg's order for Plaintiff's immediate Release.

35. Schizophrenia is a major chronic mental illness that is a lifelong illness that Requires medication to control the symptons. Plaintiff did not miraculously stop being schizophrenic but was misdiagnosed. Defendants Pharris, Hardy, Dyslin, Ingram, and Malis knew, should have known, and had a duty to know that Plaintiff was misdiagnosed and that his commitment to the EMHC was invalid.

36. Defendant James Dimas as secretary of the DHS enacted and enforced unconstitutional Practices, Procedures and Policies that led to Plaintiff's unlawful continued commitment.

37. Defendant Daniel Dyslin as acting general Counsel for the EMHC, directly supervised and ratified holding Plaintiff in a mental institution despite the fact he does not meet the clinical criteria for involuntary commitment.

38. Defendant Victoria Ingram actively participated in the scheme or artifice to keep Plaintiff confined by compelling Plaintiff's treatment team to withdraw their Request for Plaintiff's conditional Release.

39. Defendant Ingram exploited a disciplinary system that she knew, should have known and had a duty to know was arbitrary, capricious and unconstitutional to keep Plaintiff involuntarily committed.

40. Plaintiff asserts that had he received due-process, an impartial 3rd Party would find Plaintiff not at fault and Reasonably defended himself without causing harm to his assailant.

41. Defendants Daniel Hardy and Jeff Pharris directly supervised and Approved of the unlawful continued confinement of Plaintiff.

42. Daniel Hardy routinely attended Plaintiff's monthly meetings with his treatment team and was intimately involved with the complained of misconduct.

43. Plaintiff would frequently seek Defendant Pharris' help in a variety of matters including discharge from the hospital. Pharris was intimately Aware that Plaintiff did not meet the criteria for continued commitment but choose to engage in the unconstitutional confinement of Plaintiff.

44. Defendant Malis oversaw the treatment of Plaintiff including but not limited to his discharge. As acting medical director of the EMHC, Malis was responsible in Maintaining Plaintiff wrongly involuntarily committed. Malis enforced and enabled unconstitutional Policies and Practices that he knew, should have known and had a duty to know were unconstitutional.

45. All these Defendants acted in joint Concert with one another.

46. None of the Above named Defendants is entitled to immunity due to the fact they violated clearly established law.

47. On information and belief, Defendants Jeff Pharris and Daniel Hardy are under investigation for federal funding Fraud.

## Count 2:
## Conspiracy to Deprive civil Rights:
## All Defendants

48. Plaintiff hereby incorporates by reference and sets forth verbatim Paragraphs 1-47.

49. At all times relevant hereto, Plaintiff had the constitutional Right to be free from false imprisonment and free from government interference in his liberty without due-process of law

50. Defendants Ingram, Dyslin, Pharris, Hardy, and Malis explicitly and implicitly engaged in a agreement to maintain Plaintiff confined to a mental institution under false Pretense

51. Defendant Dimas directly oversaw and ratified the unlawful agreement to maintain Plaintiff confined.

52. By keeping Plaintiff unlawfully confined, all named Defendants inflicted severe and substantial Damages on Plaintiff. Plaintiff reserves the Right to assess Damages at a later Date with advice of counsel.

53. All named defendants asserted that Plaintiff could not make Progress towards Discharge or conditionally discharge Plaintiff due to his immigration status

54. This assertion turned out to be false as evidenced by ICE's disinterest in taking custody of Plaintiff.

55. All named Defendant's actions turned the EMHC, a mental institution, into an immigration detention center. Such actions clearly violates the law and clearly goes beyond their authority

56. None of the named defendants are entitled to immunity from the complained of misconduct

57. Plaintiff is entitled to Punitive Damages due to the wantan and malicious nature of their actions

## Prayer For Relief

Plaintiff Prays this court enter a judgment in his favor and order the following

a) declaratory judgment

b) Compensatory on all claims as allowed by law

c) Punitive Damages

d) Any other Relief this court deems just and equitable.

## Verification

Plaintiff verifies on Pains and Penalty of Perjury That the Above statements of fact are true and correct and any conclusory statements and statements made on information and belief are made in good faith and Plaintiff believes to be true

Respectfully Submitted: Ali Naoleuf